UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK 53 / 69

CIVIL MINUTES - GENERAL

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):          Attorneys Present for Defendant(s):

Not Present                                  Not Present

**Proceedings:**   **(In Chambers) Order GRANTING in part and DENYING in part Defendants' Motion for Summary Judgment, and DENYING Defendants' Motion for Rule 11 Sanctions**

Pending before this Court are two motions by Defendants: (1) Defendants' Motion for Summary Judgement; and (2) Defendants' Motion for Sanctions Pursuant to Rule 11. After considering the moving and opposing papers, as well as oral argument on June 16, 2008, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment, and DENIES Defendants' motion for sanctions.

I.   BACKGROUND

   A.   The Parties

Plaintiff George Clinton ("Plaintiff" or "Clinton") is a recording artist, composer, performer, producer, a member of groups such as Parliament, and a producer of a number of artists, including Parlet. (FAC, ¶¶ 5, 11; Defendant's Statement of Uncontroverted Facts "UF," ¶¶ 1-2.) Defendants are the record labels Universal Music Group, Inc. and UMG Recordings, Inc. (collectively "UMG" or "Defendants"). (FAC, ¶¶ 6, 7.) UMG, formerly known as Polygram Records, Inc., is the successor-in-interest to the rights of Casablanca Records, Inc. ("Casablanca Records") and Filmworks, Inc. ("Filmworks"). (UF, ¶ 4.)

   B.   Letter/Memoranda Agreements

In the early to mid-1970's and into 1980, Clinton recorded and produced sound

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK 53 / 69

CIVIL MINUTES - GENERAL

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

recordings as the artist Parliament and produced records for Casablanca Records. Prior to 1980, Clinton performed these services pursuant to several letter or memoranda agreements. (Clinton Dec., ¶ 3.) For a period of time, Thang, Inc. ("Thang) acted as Plaintiff's loan-out company.[1] (UF, ¶ 5.) Under a March 17, 1976 letter agreement between Casablanca Records and Thang, Thang delivered certain master recordings of Parliament performances to Casablanca Records. (UF, ¶ 6.) On July 19, 1977, Casablanca and Thang entered into an agreement regarding the recording and delivery of sound recordings by the artist Parlet. (UF, ¶ 7.) Disputes subsequently arose between Clinton and Casablanca, which the parties resolved and memorialized in an October 17, 1980, Settlement Agreement. (UF, ¶¶ 8-9.) The Settlement Agreement also contemplated that the parties would enter into new agreements that would supersede all prior agreements. (UF, ¶ 9.)

    C.    <u>Agreements between Plaintiff and Defendants in 1980</u>

        *1.    1980 Artists' Production Agreement*

In the fall or winter of 1980, the parties entered into a new agreement relating, in part, to Clinton's recording and producing sound recordings as the artist Parliament. (Clinton Dec., ¶ 5.) The production agreement Clinton recalls signing also contained provisions relating to the artist Parlet. (Id.) Although Clinton does not recall signing the Artist's Production Agreement ("1980 Agreement") dated October 23, 1980, he does have a copy of the agreement. (Id.)

The 1980 Agreement, between Casablanca Records, Filmworks and Clinton's private loan-out company, P-Funk, Inc. ("P-Funk"), provides for "the recording and record production services of GEORGE CLINTON ('Artist') performing professionally as 'PARLIAMENT'." (FAC, Ex. A ("1980 Agreement"), A-26.) The 1980 Agreement expressly acknowledges that Clinton's "production and recording services [were] the essence of the Agreement." (1980 Agreement, A-27, ¶ 2.2.) In addition, the 1980 Agreement grants Casablanca Records certain rights, including, among others, (i) all right, title, and interest in and to the Parliament sound recordings created by Clinton (Id., A-46-47, ¶ 13(a)); (ii) the right to exploit the Parliament sound recordings created by Clinton (Id.); and (iii) the perpetual right to use Clinton's name, likeness, voice and sound effects and biographical information (Id. at A-47-48, ¶ 13(b).) In return, Casablanca Records agrees to (i) pay royalties to P-Funk from monies generated from

---

    [1]According to the FAC, a loan-out company is a company through which an artist such as Clinton provides his creative services. (FAC, ¶ 9.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK 53 / 69

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

exploiting the Parliament sound recordings (Id. at A-34-36, ¶ 7); (ii) account to P-Funk in connection with its exploitation of the Parliament sound recordings, with a corresponding audit right granted to P-Funk (Id. at A-90-91) and (iii) release Parliament sound recordings created by Clinton in the United States. (Id. at A at A-71-72, ¶ 33.)

Exhibit A to the 1980 Agreement addresses the computation of royalties, and also includes an "Objection Provision," which states:

> All royalty statements and other accounts rendered by Company shall be binding upon Producer and shall not be subject to any objection for any reason unless specific objection is made by Producer, by written notice to Company stating the basis thereof, within three (3) years after the date such statement or account is rendered. Unless notice is given to Company as provided in this Paragraph 20, each royalty statement and other account rendered by Company shall be final, conclusive, and binding upon Producer, and shall constitute an account stated.

(Id. at A-90, ¶ 20.)

The same paragraph includes a "Limitation Provision," which states:

> Producer shall be foreclosed from maintaining any action, claim or proceeding against Company in any forum or tribunal with respect to any statement or account due hereunder unless (a) written notice is made to Company as provided in this paragraph 20 and (b) such action, claim or proceeding is commenced against Company in a court of competent jurisdiction within three (3) years after the date on which such statement or other account is rendered.

(Id.)

   2.   *Parlet Agreement*

In December 1980, Clinton entered into a subsequent written agreement involving the artist Parlet and other artists ("Parlet Agreement"). (UF, ¶¶ 19-20.) Clinton does not have a copy of the Parlet Agreement, but Defendants produced a copy of that agreement to Plaintiff during discovery. (UF, ¶ 20.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK 53 / 69

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

D.   First and Second Audit Reports

In the spring or summer of 2001, Clinton received his first royalty statements and payments from Defendants for the exploitation of Parliament sound recordings under the 1980 Agreement. (Clinton Dec., ¶ 7.) The royalty statements covered the period from 1996 through 2000, and the payment amounted to over $800,000. (Id.)

On August 14, 2002, Clinton gave written notice to Defendants of his intent to audit their books and records to determine the accuracy of the royalty statements and payments rendered pursuant to the 1980 Agreement. (UF, ¶ 24.) The notice stated:

> This letter shall also constitute notice of the Artist's objection to those statements sent by Universal by reasons of underpayment and non-payment of royalties, the nature and extent of which shall be determined by and specified in the report of the examination aforesaid which shall be furnished after its completion.

(Id.)

Beginning in September 2003, Clinton and Defendants entered into several tolling agreements. (UF, ¶ 30.) The first tolling agreement, dated September 26, 2003, provided:

> This letter will confirm that [UMG ] has agreed to a prospective tolling of the statute of limitations with respect to the claims relating to the [] audit . . . This tolling agreement will expire on March 26, 2004, and does not extend or revive any limitations period that has already expired as of the date hereof, and does not affect or limit any defense that may already exists, including estoppel, waiver and laches.

(Hale Dec., Ex. E at 64.) Defendants extended the tolling agreement several times, with the latest extension setting the expiration date for January 31, 2007. (Hale Dec., Ex. E.)

On December 9, 2004, Clinton provided Defendants with objections to the royalty calculations based on an audit report from his auditor Wlodinguer, Erk & Chanzis ("WEC") ("First Audit Report"). (UF, ¶ 25.) The First Audit Report, which covered royalty statements for the periods from January 1, 2000 through June 30, 2003, concluded that Defendants owed Plaintiff additional royalties of $697,243. (Hale Dec., Ex. C at 22.) On April 12, 2006, Clinton

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK 53 / 69

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

provided Defendants with an updated and amended Second Audit Report covering the same time period. This report, in addition to the claims raised in the First Audit Report, raised claims for sampling and synchronization uses. (UF, ¶ 27.) The Second Audit Report concluded that Defendants owed Plaintiff additional royalties in the amount of $32,988,493. (Hale Dec., Ex. D at 31.)

    E.    The Complaint

When Defendants did not respond to the Second Audit Report, on January 29, 2007, Clinton filed the instant action for breach of contract for failure to pay royalties. Clinton later filed a First Amended Complaint ("FAC") asserting seven causes of action: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) unjust enrichment, (4) rescission of contract, (5) declaratory judgement, (6) imposition of constructive trust, and (7) an accounting. Defendants now seek summary judgment on all seven causes of action pursuant to Fed. R. Civ. P. 56. In a separate motion, Defendants move for Rule 11 sanctions against Plaintiff.

II.    SUMMARY JUDGMENT

    A.    Legal Standard

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *Id.* at 257.

A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *Anderson,* 477 U.S. at 250-51.

If the moving party seeks summary judgment on a claim or defense for which it bears the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK 53 / 69

CIVIL MINUTES - GENERAL

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

burden of proof at trial, the moving party must use affirmative, admissible evidence. Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. Fed. R. Civ. P. 56(e).

  B. Discussion

  Defendants proffer six reasons why summary judgment should be granted: (1) Clinton lacks standing; (2) Clinton has no evidence of the contracts on which his claims are based; (3) Clinton's contract-based claims are barred by the applicable limitations periods; (4) Clinton has no evidence to support his damages claims; (5) Clinton seeks to impose terms and conditions that have no basis in the agreement, and (6) the remaining claims are merely remedies. The Court need only address Defendants' first three arguments.

    *1. Standing*

  First, Defendants argue that all Clinton's claims fail due to lack of standing. (Motion at 9.) These are the same arguments previously considered and rejected by this Court in its July 27, 2007 Order Denying Defendants' Motion to Dismiss. (Dock. No. 37.) Having discussed the standing issue at length in that Order, the Court sees no reason to reiterate the same reasoning. Defendants' motion for summary judgment based on standing is DENIED.

    *2. Evidence of the Contracts at Issue*

  Next, Defendants contend that all the FAC's claims are barred because Clinton has not established the existence of a contract in either the 1980 Agreement or the Parlet Agreement.

  A claim for breach of contract requires: 1) the existence of the contract, 2) performance by the plaintiff or excuse for nonperformance, 3) breach by the defendant, and 4) damages. *First Commercial Mortgage Co. v. Reece,* 89 Cal. App. 4th 731, 745 (2001). Clinton's other causes of action for breach of implied covenant of good faith and fair dealing, unjust enrichment, rescission of contract, declaratory judgement, imposition of constructive trust, and accounting all rely on the existence of an enforceable contract.

    *(a) 1980 Artists's Production Agreement*

  Clinton premises six out of seven claims in the FAC on purported violations of the 1980

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**LINK 53 / 69**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

Agreement, attached as Exhibit A to the FAC. However, despite the attachment of the 1980 Agreement, Defendants argue that Clinton explicitly "repudiated" that agreement, and thus has failed to establish the existence of the recording agreement upon which he purportedly is bringing suit. According to Defendants, Clinton repudiated the agreement by testifying that Exhibit A was *not* a true and correct copy of the artist production agreement he executed on behalf of P-Funk (UF, ¶ 13); that he did not sign the purported agreement attached as Exhibit A (UF, ¶ 14); and that he executed a different production agreement. (UF, ¶ 16.)

Contrary to Defendants' allegation, Clinton's deposition testimony does not reflect that he repudiated the 1980 Agreement. Clinton testified that he did not recall signing the 1980 Agreement and that he did not think the 1980 Agreement was a true and complete copy of the Parliament Artist's Production Agreement. (Borkowski Dec., Ex. B "Clinton Depo." at 46: 1-11, 47:9-13). Nonetheless, the 1980 Agreement is the only agreement the parties have produced. The 1980 Agreement constitutes the contract under which Defendants operated, exploited the Parliament master recordings, and issued royalty statements to Clinton. Moreover, the 1980 Agreement is also the contract that Clinton provided to WEC so that they could conduct the audits at issue in this case. The Court DENIES Defendants' summary judgment motion based on Clinton's repudiation of the 1980 Agreement.

*(b)     Parlet Agreement*

Clinton's fifth cause of action seeks a declaration of rights relating to the Parlet Agreement. Specifically, the FAC states that the parties "never executed a written agreement to govern Defendants' exploitation of the Parlet Master Recordings including the revenue to be paid to Clinton from such exploitation . . . ." (FAC, ¶ 75.) Clinton asks the Court to declare (1) that a valid and enforceable agreement exists between the parties regarding the Parlet Master Recordings, and (2) the material terms of that agreement. (FAC, ¶¶ 71-72.)

Defendants argue that Clinton repudiated the FAC's allegations that form the basis of his claims concerning the new Parlet agreement - "namely that the declaration of rights and obligations with respect to that agreement is appropriate because no formal, written agreement was ever executed subsequent to the Settlement Agreement." (Motion at 8.) According to Defendants, because Clinton has since testified in his deposition that he *did* enter into a written agreement regarding Parlet, but claims not to have a copy of that agreement (UF, ¶ 20), Clinton cannot maintain his declaratory relief claim asking the court to determine the material terms of a new Parlet agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK 53 / 69

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

At the hearing, Defendants further argued that the parties have produced a copy of the Parlet Agreement, and that no declaration of rights regarding that agreement is necessary. Plaintiff does not dispute that Defendants produced a copy of the Parlet Agreement. (UF, ¶ 19.) However, it does not appear that either party has submitted a copy of the Parlet Agreement to this Court.[2]

Clinton, on the other hand, argues that without proof of a written agreement, Defendants can have no claim to the recordings, since, under the Copyright Act of 1976, copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). According to Clinton, Defendants remain in possession of and apparently continue to exploit the recordings.

In light of the parties' failure to provide the Court with a copy of the Parlet Agreement, a material dispute exists as to the existence of an enforceable agreement regarding the Parlet Master Recordings. Consequently, Defendants' motion for summary judgment on the fifth cause of action for declaratory relief is DENIED.

        *3.     Contractual Objection and Limitations Period - 1980 Agreement*

Defendants further assert that Objection and Limitations Provisions contained in the 1980 Agreement bar the FAC's first, second and third causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing and unjust enrichment. Clinton received his first royalty accounting in Spring/Summer 2001, covering the period 1996 through 2000 (Clinton Dec., ¶ 6.) In the first three causes of action, Clinton seeks to recover unpaid royalties from the period January 1, 2000 through June 30, 2003, during which Defendants provided seven royalty statements. (UF, ¶ 68.)

"If contractual language is clear and explicit, it governs." *Bank of the West v. Superior*

---

[2]If the parties have submitted the Parlet Agreement, they fail to apprise the Court of where to find it. Defendants' UF ¶ 19 cites Clinton's Response to RFA No. 22, in which Clinton denies that Exhibit E, attached hereto, is a true and authentic copy of the December 23, 1980 Agreement. (Borkowski Dec., Ex. H.) Exhibit E is presumably the Parlet Agreement. Yet Defendants have failed to attach Exhibit E within Exhibit H, and fail to direct the Court where in the copious documents filed it should locate the referenced Parlet Agreement. As other courts have noted, " 'judges are not like pigs, hunting for truffles buried in briefs.'" *Independent Towers of Wash. v. Washington,* 350 F.3d 925, 929 (9th Cir. 2003) (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK 53 / 69

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

*Court*, 2 Cal.4th 1254, 1264 (1992). Contracts should be interpreted by their plain language, unless doing so would result in an absurd construction. Cal. Civ. Code § 1638. The entire contract should be read together as a whole, giving effect to every part. Id. § 1641. A court may turn to extrinsic evidence to construe the contract, if the evidence shows the intent of the contracting parties and offers a meaning to which the contract is reasonably susceptible. *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, Inc., 69 Cal.2d 33 (1968).

                *(a)*      *Objection Provision*

As stated above, the Objection Provision provides:

> All royalty statements and other accounts rendered by Company shall be binding upon Producer and shall not be subject to any objection for any reason ***unless specific objection is made by Producer, by written notice to Company stating the basis thereof, within three (3) years after the date such statement or account is rendered.*** Unless notice is given to Company as provided in this Paragraph 20, each royalty statement and other account rendered by Company shall be final, conclusive, and binding upon Producer, and shall constitute an account stated.

(1980 Agreement at A-90, ¶ 20; UF, ¶ 22) (emphasis added).

                *(I)*      *First Audit Report*

During the period of time under which Clinton seeks damages, January 1, 2000 through June 30, 2003, Defendants provided seven Royalty Statements:

1. period ending June 30, 2000;
2. period ending December 31, 2000;
3. period ending June 30, 2001;
4. period ending December 31, 2001;
5. period ending June 30, 2002;
6. period ending December 31, 2002; and
7. period ending June 30, 2003.

(UF, ¶ 68.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK 53 / 69

CIVIL MINUTES - GENERAL

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

Defendants point out that under the Objection Provision, Clinton is limited to contesting any royalty statements rendered more than 3 years before making "specific objections." According to Defendants, the first time Clinton made "specific objections was in the First Audit Report, dated December 9, 2004. Defendants thus contend that Clinton is barred from bringing claims based on Royalty Statements 1-3, since "specific objections" to those statements were due before the First Audit Report, on June 30, 2003, December 31, 2003 and June 30, 2004 respectively.³ (Motion at 18.)

Clinton, however, disputes that December 9, 2004 was the date he first made "specific objections." (SGI, ¶ 26.) Instead, Clinton contends that in his audit notice dated August 12, 2002, he provided the degree of specificity "that he was capable of at that point in time." (Id.) While this may be true, Clinton has not raised a genuine issue of material fact that his objections in the August 12, 2004 audit letter constituted "specific objections." The letter stated that it was "notice of the Artist's objection . . . the nature and extent of which shall be determined by and ***specified in the report of the examination aforesaid*** which shall be furnished after its completion." (UF, ¶ 24) (emphasis added). This express language indicates that Clinton did not expect to provide "specific objections," including the basis for such objections, until delivery of the audit report, which occurred on December 9, 2004.

The Objection Provision, however, does not bar claims based on Royalty Statements 4-7. In order to maintain a viable claim based on Royalty Statement 4 for period ending December 31, 2001, Clinton had to made "specific objections" to that statement by December 31, 2004. Clinton accomplished this when he provided Defendants with "specific objections" in the December 9, 2004 First Audit Report. Therefore, Royalty Statement 4 and later Royalty Statements 5 -7 are not barred by the Objection Provision.

*(ii) Second Audit Report*

Defendants further argue that Clinton did not provide them with "specific objections" about the purported sampling and synchronization uses until April 12, 2006, the date of the Second Audit Report. Defendants therefore claim that Clinton is barred from contesting royalty

---

³Pursuant to Objection Provision, Clinton was required to make specific objections to Royalty Statement No. 1, for the period ending June 30, 2000, by June 30, 2003; to Royalty Statement No. 2, for the period ending December 31, 2000, by December 31, 2003; and to Royalty Statement No. 3, for the period ending June 30, 2001, by June 30, 2004.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK 53 / 69

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

statements rendered before three years prior to the date of the Second Audit Report, or April 12, 2003. Defendants argue that this eliminates virtually all of the royalty statements upon which Plaintiff is suing.

In response, Clinton argues that Defendants' lack of cooperation with the audits impacted Plaintiff's ability to provide specific objections. In a letter dated December 9, 2004 and accompanying the First Audit Report, Clinton's counsel informed Defendants:

> . . . [Defendants have] not provided synchronization and master use licenses. This is a major problem and could involve very substantial underpayments to our client. For example, we are aware of extensive sampling uses of our client's recordings with respect to which [Defendants] appear[] not to have reported any income at all . . . We must receive from [Defendants] complete documentation and information about sampling of our client's product, including, without limitation, all documents that reflect payments to publishers sampling for sampling of the songs involved.

(Hale Dec., Ex. C, ¶ 3.)

Despite Defendants' contention to the contrary, a reasonable jury could construe this language as a "specific objection" to unpaid royalties based on synchronization and sampling uses. For this reason, whether this objection satisfies the Objection Provision's specificity requirement is a material issue of fact that would be inappropriate for the Court to determine on summary judgment. *See Allman v. UMG Recordings,* 530 F.Supp.2d 602, 606 (S.D.N.Y. 2008). Consequently, under the Objection Provision, Clinton may maintain his claims for unpaid royalties for sampling and synchronization uses based on Royalty Statements 4-7. As for Royalty Statements 1-3, however, Clinton is precluded from bringing causes of action based on these statements for the reasons discussed, *supra.*

>           *(b)     Limitations Provision*

Even though the Objection Provision does not bar Clinton's first, second and third causes of action to the extent they are based on Royalty Statements 4-7, they are nevertheless barred by the Limitations Provision in the 1980 Agreement.

The "Limitation Provision" provides:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK 53 / 69

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

> Producer shall be foreclosed from maintaining any action, claim or proceeding against Company in any forum or tribunal with respect to any statement or account due hereunder *unless* (a) written notice is made to Company as provided in this paragraph 20 *and* (b) such action, claim or proceeding is commenced against Company in a court of competent jurisdiction within three (3) years after the date on which such statement or other account is rendered.

(1980 Agreement, Ex. A at A-90, ¶ 20.)

Clinton brought suit on January 29, 2007. Under the Limitations Provision, Clinton was required to commence suit with respect to any given royalty statement within 3 years after the date on which that statement was *rendered.* Paragraph 21 of the 1980 Agreement explicitly addresses when a royalty statement is deemed "rendered":

> Each royalty statement shall be deemed to have been rendered on the last date such statement is due hereunder pursuant to paragraph 18 above unless Company receives notice from Producer, within ninety (90) days after such date, after Producer has not received such statements. If Company timely receives such notice from Producer, then such statement shall be deemed rendered as of the date such statement is actually rendered to Producer.

(Id. at A-91, ¶ 21.)

Paragraph 18 states:

> Company shall compute royalties and render statements to Producer hereunder within ninety (90) days after the last day of June and December of each year (or such other semi-annual payment days as Company may adopt) for the preceding six (6) month period . . . .

(Id. at A-90, ¶ 18.)

According to these provisions, Plaintiff can only maintain suit arising from royalty statements rendered after January 29, 2004, or 3 years before he filed suit. However,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**LINK 53 / 69**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

Plaintiff bases his damages claim on the 7 royalty statements for the periods from *January 1, 2000 through January 30, 2003*. Because Clinton has submitted no evidence that he gave the requisite 90-days notice to Defendants of non-receipt of the royalty statements, under Paragraph 21, the statements were rendered on the date they were due. Accordingly, based on the objective language of subdivision (b) of the Limitations Provision, Clinton is barred from bringing claims based on Royalty Statements 1-7, all of which were rendered more than three years prior to the date of filing suit, or before January 29, 2004.[4]

Clinton asserts, however, that a genuine issue of material fact exists as to when or if the royalty statements were "rendered" (Opp'n at 19-20), and as to whether his written notice constituted a "specific objection" under the terms of the 1980 Agreement. (Opp'n at 20.) According to Clinton, because the Limitation Provision is linked to the date on which the challenged royalty statements are "rendered," the same issue of material fact existing regarding the Objection Provision also precludes summary judgment on Defendants' limitations defense. (Opp'n at 20-21.) In addition, Clinton argues that both aspects of Defendants' affirmative defenses based on the Objection and Limitation Provisions raise questions of waiver and estoppel on Defendants' part, which are generally questions of fact that cannot be resolved on summary judgment. (Opp'n at 21.)

Clinton's argument has no merit, as it ignores Paragraph 21's explicit provision defining when a royalty statement is deemed "rendered." Moreover, Clinton's waiver and estoppel arguments likewise fail, since the objective language of the contract places the burden on Clinton to notify Defendants if he has not received a timely royalty statement. (1980 Agreement at A-90, ¶ 21.) Nothing in the record indicates that Clinton ever, in over 20 years from 1980 - 2001, informed Defendants that he had not received royalty statements when they were due. In sum, since all Clinton's claims are based on royalty statements rendered from January 1, 2000 through June 30, 2003, Clinton claims for breach of contract, implied covenant of good faith and fair dealing, and unjust enrichment must be dismissed on

---

[4] At the hearing on summary judgment, Clinton's counsel complained that Defendants did not raise the issue of when an royalty statement was deemed "rendered" until the Reply. Contrary to his assertion, Defendants' Motion specifically raised this issue in his original Motion, stating: "Plaintiff's claim also is independently barred by the Limitation Provision, under which Plaintiff must commence suit with respect to a given royalty within three years after the date on which such statement was rendered." (Motion at 18–19.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK 53 / 69

CIVIL MINUTES - GENERAL

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

summary judgment.[5]

### 4. Remaining Claims

As for the fourth cause of action for rescission of the 1980 Agreement, the sixth cause of action for imposition of a constructive trust, and the seventh cause of action of an accounting, Defendants contend that because these remedies are based on the same allegations underlying Clinton's substantive claims based on the 1980 Agreement, for which summary judgement is proper, the same result is warranted on these remedies. The Court agrees. Accordingly, the Court grants summary judgment on these remaining causes of action.

### III. MOTION FOR RULE 11 SANCTIONS

#### A. Legal Standard

Pursuant to the Fed. R. Civ. P. 11, "by presenting to the court a pleading . . . a party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal

---

[5]In his Opposition, Clinton additionally argues that although Defendants specified in the tolling agreements that they were agreeing to toll the statute of limitations, they never contended that Clinton's claims would still be barred by any contractual time limitation for bringing suit, nor do the tolling agreements clearly reflect any such contention. (Opp'n at ¶ 22, citing Zisk Dec., ¶ 11.) Clinton thus impliedly argues that his claims for unpaid royalties were tolled. This argument fails, since the tolling agreements covered tolling of the *statute of limitations*, but make no mention of the *contractual limitations* periods. (UF, ¶ 31) (emphasis added). Thus, the plain language demonstrates that these tolling agreements did not apply to the contractual limitations period in the 1980 Agreement. Furthermore, to buttress this interpretation of the tolling agreements, Defendants have produced evidence of tolling agreement made between Clinton and another record company, which states: "The parties further agree that, in the event the *statute of limitations or any other limitations periods of any kind, whether by contract or law*, with respect to a claims for allegedly unpaid royalties . . . such statute of limitations or other limitations periods shall be tolled." (McMullan Dec., ¶ 2, Ex. A) (emphasis added). This shows that Clinton was aware or should have been aware that explicit language regarding contractual limitations periods would be necessary to toll those periods.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LINK 53 / 69

CIVIL MINUTES - GENERAL

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(2).

Where a party has violated Rule 11(b), Rule 11(c) authorizes the imposition of both monetary and nonmonetary sanctions, including the striking of individual claims or defenses that are deemed frivolous. Fed. R. Civ. P. 11(c)(2). "[T[]he central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Thus, courts reserve the imposition of sanctions "for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988).

   B.   Discussion

Defendants seek Rule 11 sanctions, in the form of dismissal of the FAC and attorneys' fees and costs, on the grounds that Clinton has continued to prosecute a case that has no evidentiary support. Defendants argue that during the deposition, Clinton repeatedly and unambiguously asserted that Ex. A to the FAC was not the 1980 Agreement that Clinton remembered signing, and that it was not the operative agreement in this action. (Motion at 6.) In addition, Clinton was unable to identify the material terms of the supposedly true operative agreement, which was not attached to the FAC. (Motion at 11.) Defendants further point out that despite the FAC's allegations that denying the existence of a written Parlet Agreement, Clinton testified at his deposition that he signed a written agreement regarding Parlet. (Motion at 13.) Defendants thus argue that by simply not bothering to ask Clinton whether he signed Ex. A to the FAC or clarify whether Clinton ever executed a written Parlet Agreement before making contrary allegations in the FAC, Clinton's counsel failed to satisfy the obligation imposed on him by Rule 11.

Having already determined that Ex. A to the FAC (the 1980 Agreement) is the relevant agreement in this action, Defendants have presented no facts demonstrating the Clinton or his counsel acted unreasonably under the circumstances. The same holds true with respect to the Parlet Agreement, as the Court has already determined that there is a triable issue of fact as to the existence of that agreement. Defendants' motion for Rule 11 sanctions is therefore DENIED.

IV.   CONCLUSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**LINK 53 / 69**

CIVIL MINUTES - GENERAL

| Case No. | CV 07-672 PSG (JWJx) | Date | June 19, 2008 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, Inc., *et al.* | | |

    For the foregoing reasons, the Court hereby GRANTS summary judgment on the first, second, third, fourth, sixth and seventh causes of action. The Court hereby DENIES summary judgment as the fifth cause of action for declaratory relief based on the Parlet Agreement.

    The Court hereby DENIES Defendants' motion for sanctions under Rule 11.

    IT IS SO ORDERED.

                                                                                                                                    :

Initials of Preparer