1  RUSSELL J. FRACKMAN (SBN 49087)
   rjf@msk.com
2  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
3  Los Angeles, California 90064-1683
   Telephone:  (310) 312-2000
4  Facsimile:   (310) 312-3100

5  Attorneys for Defendants
   Universal Music Group, Inc
6  and UMG Recordings, Inc.

7

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

11 | GEORGE CLINTON, an individual, | Case No. CV 07-00672 PSG (JXJx)
12 |                  Plaintiff,    | The Honorable Philip S. Gutierrez
13 |        v.                       | **NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF GEORGE CLINTON;**
14 | UNIVERSAL MUSIC GROUP, INC., a Delaware corporation; and UMG RECORDINGS, INC., a Delaware corporation, |
15 |                                 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
16 |                  Defendants.    |

18  Date:  August 8, 2011
19  Time:  1:30 p.m.
    Ctrm.: 790

[line numbers 20–28 continue]

3894296.1

NOTICE AND MOTION FOR PARTIAL SUMMARY JUDGMENT

# NOTICE OF MOTION AND MOTION

TO: PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 8, 2011, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Philip S. Gutierrez of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, California 90012, defendants UMG Recordings, Inc., and Universal Music Group, Inc. (collectively "UMG"), will, and hereby do, move pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment against plaintiff George Clinton on the ground that there is no genuine issue as to any material fact and that UMG is entitled to judgment as a matter of law for the following reasons:

1. Plaintiff's first claim for breach of contract with respect to internet royalties is barred as a matter of law by contractual limitations and objections provisions.

2. Plaintiff's claims for an accounting and for declaratory judgment are barred as a matter of law to the extent they refer to the internet royalty claim.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Statement of Uncontroverted Facts and Conclusions of Law, and Declaration of Russell J. Frackman, the Court's Order dated May 4, 2011, Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, all papers and pleadings on file in the action, any reply papers filed by UMG, and any oral argument that the Court may entertain at the hearing on this Motion.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place on June 7, 2011.

DATED: June 20, 2011

RUSSELL J. FRACKMAN
MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Russell J. Frackman
Russell J. Frackman
Attorneys for Defendants

## Introduction

In his Second Amended Complaint, plaintiff George Clinton ("Clinton") for the first time adds a new claim for alleged underpayment of internet royalties, *i.e.*, exploitation by "download providers … and mastertone providers … for permanent downloads." Second Amended Complaint ("SAC") ¶¶ 30, 31, 43. Clinton bases this new claim on a provision of the Production Agreement that is attached as Exhibit A to the SAC never previously pleaded (namely, ¶ 10 of Exhibit A to the Production Agreement, quoted at SAC ¶ 25). Clinton's internet royalties claim fails as a matter of law because he failed to comply with the Objections Provision and the Limitations Provision of the Production Agreement with respect to his newly asserted claim.

Clinton's two audit reports (for the period January 1, 2000, through June 2003), which he alleges constitute "specific objection in writing" to those accounting statements (SAC ¶¶ 37, 39, 44), did not refer to, let alone "specifically object" to, the calculation of internet royalties or refer to or claim any breach of paragraph 10 of the Production Agreement. Therefore, even assuming that the tolling agreements between the parties served to toll both the statute of limitations and contractual limitations provisions of the Production Agreement, Clinton's new claims are barred for failure to timely specifically object in writing and/or timely file suit. The only remaining issues in this case are those limited and discrete alleged breaches not disposed of by the Court's Order dated May 4, 2011, Granting in Part and Denying in Part Defendants' Motion for Summary Judgment ("Summary Judgment Order").[1]

---

[1] The parties will be filing a stipulation to strike certain paragraphs/claims from the SAC which were disposed of and rendered moot by the Summary Judgment Order.

## I. THE LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) establishes that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." F.R.C.P. 56(a). *See* Advisory Committee Note, 2010 ("The first sentence of subdivision (a) is added to make clear at the beginning that summary judgment may be requested … as to … part of a claim or defense."

A party seeking summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"[A] moving defendant may shift the burden of producing evidence to the nonmoving plaintiff merely by 'showing' – that is, pointing out through argument – the absence of evidence to support plaintiff's claim." *Fairbank & Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000); *see Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1127 (E.D. Cal. 2008) (once defendants assert a lack of evidence, "plaintiff bears the burden of producing evidence on which the jury could reasonably find in its favor").

## II. CLINTON'S NEW INTERNET ROYALTY CLAIM IS BARRED.

The factual background relating to the Production Agreement is uncontested and fully described in the Summary Judgment Order at 1-3. SUF 1-3. As relevant

Case 2:07-cv-00672-PSG -JWJ   Document 201   Filed 06/20/11   Page 6 of 11   Page ID
#:5636

here, and as the Court recognized, Exhibit A to the Production Agreement, which addresses the computation of royalties, includes an "Objection Provision" (also known as an "Incontestability Clause") which states:

> "All royalty statements and other accounts rendered by Company shall be binding upon Producer and shall not be subject to any objection for any reason unless specific objection is made by Producer, by written notice to Company stating the basis thereof, within three (3) years after the date such statement or account is rendered. Unless notice is given to Company as provided in this Paragraph 20, each royalty statement and other account rendered by Company shall be final, conclusive, and binding upon Producer, and shall constitute an account stated."

*Id.* at 3 (quoting Production Agreement, ¶ 20); SUF 7.

The same paragraph of the Production Agreement includes a "Limitations Provision," and provides that ***both*** the Objections Provision and the Limitations Provision must be complied with as to each accounting statement:

> "Producer [Clinton] shall be foreclosed from maintaining any action, claim, or proceeding against Company [Defendants] ... with respect to any statement or account due hereunder unless (a) written notice is made to Company as provided in this paragraph 20 ***and*** (b) such action, claim, or proceeding is commenced ... within three (3) years after the date on which ***such statement*** or other account is rendered." *Id.* (emphasis added). SUF 8.

Thus, the burden is squarely on Clinton to provide timely, specific written objections and to timely file suit. These provisions have been included in entertainment (and other contracts) for decades and are valid and enforceable. *See, e.g., Elliott-McGowan Prods. v. Republic Prods., Inc.*, 145 F. Supp. 48, 49 (S.D.N.Y. 1956); *Allman v. UMG Recordings*, 530 F. Supp. 2d 602, 605 (S.D.N.Y. 2008) ("The 1985 Agreement's Objection Provision is an enforceable

3
POINT AND AUTHORITIES RE: MOTION FOR PARTIAL SUMMARY JUDGMENT

incontestability provision."); *Miller v. Columbia Records*, 415 N.Y.S.2d 869, 870-71 (N.Y. App. Div. 1979) (accord); *see also Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.*, 38 Cal. App. 4th 1532, 1547-48 (1995) ("In general, California courts have permitted contracting parties to modify the length of the otherwise applicable California statute of limitations"); *Beeson v. Schloss*, 183 Cal. 618, 622-24 (1920) ("It is a well-settled proposition of law that the parties to a contract may stipulate therein for a period of limitation, shorter than that fixed by the statute of limitations....")[2]; *see generally* D.E. Biederman, *et al.*, <u>Law and Business of the Entertainment Industries</u> at 565 n.2 (4th ed. 2001) ("Publishers and virtually all other companies in entertainment who account to third parties for royalties seek by contract to shorten the otherwise available statute of limitations on accounting matters.... [M]any agreements will limit to one to three years the period of time within which the royalty participant may object to an accounting.... The provisions are common and have been upheld.").

The policy reasons for Objections and Limitations Provisions is to permit the accounting party to close its books at a time certain, as agreed to by the parties, and not be required to attempt to investigate or deal with stale claims. *See Breitman v. Brody*, 113 Cal. App. 2d 642, 645 (1952) (the policy of these provisions is "to insure prompt settlement and to prevent a situation such as the case at bar – a long and secret accumulation of claims without bringing them to the attention of the other party"); *Boston Edison Co. v. F.E.R.C.*, 856 F.2d 361, 372 (1st Cir. 1988) ("A reasonable claims limitation clause ... clearly enhances economic equilibrium by bringing certainty to the parties' dealings after the passage of an adequate period of time.") The need for and applicability of such provisions is illustrated here, where the claims are many years old and Defendants had no reason to believe they were an

---

[2] The parties to the Production Agreement were California corporations. SUF 4.

1   issue. (In fact, based on the audit reports, Defendants had every reason to believe
2   they were not.)³

3         The Objections and Limitations Provisions as found in the Production
4   Agreement are clear and unambiguous. Clinton does not and cannot contend
5   otherwise. They require an objection that is both "specific" and "in writing."
6   Black's Law Dictionary defines "specific objection" as "[a]n objection that is
7   accompanied by a statement of one or more grounds in support of the objection."
8   (9th ed. 2009); *see Allman*, 530 F. Supp. 2d at 605-06 ("the Objection provision
9   ***clearly and unambiguously*** states that all royalty statements rendered by UMG to
10  plaintiffs are binding ...") (emphasis added); *Franconero v. Universal Music Corp.*,
11  No. 02 Civ. 1693 (RO) 2003 WL 22990060, 70 U.S.P.Q. 2d 1398, 1401 (S.D.N.Y.,
12  Dec. 18, 2003) (noting that plaintiff did not claim that the language of the
13  Incontestability Clause was unclear); *see also Han v. Mobil Oil Corp.*, 73 F.3d 872,
14  877-78 (9th Cir. 1995) (interpreting contractual limitations provision as a matter of
15  law and affirming summary judgment). Clinton completely failed to provide a
16  specific written objection with respect to his new internet royalty claims.

17        Clinton admits that his first specific objection to royalty statements was
18  provided to Defendants on December 9, 2004, in the form of his first audit report
19  (which only covered the period of January 1, 2000, to June 30, 2003). Plaintiff's
20  Statement of Disputed Material Fact, ¶ 34 ("Clinton specifically objected in writing
21  to the 2001 statement on November 22, 2004"), cited in Summary Judgment Order
22  at 10.⁴ SUF 12. The first audit report specified four objections to accounting

---

³ A similar rationale applies to the separate paragraph in the Production Agreement providing that there is no breach of the Production Agreement until Clinton gives UMG written notice of a claim. UMG then has sixty days to respond. Clinton's failure to specify the internet claims also requires summary judgment under this separate provision. Exhibit A to Production Agreement, ¶ 22. SUF 9.

⁴ The Court noted that there may be a minor dispute as to whether Clinton first provided specific written objection in November 2004, as Clinton claimed, or December 2004. Summary Judgment Order at 10. *But see* SAC ¶ 44 (alleging the
(...continued)

statements for the audit period (described as foreign withholding taxes, unauthorized premium sales, foreign and domestic pricing, and packaging deduction). SUF 12-13. The alleged damages for these specifically identified alleged breaches, according to the audit report, were calculated to be $697,243.00. *Id.* (This amount is now significantly less based on the Summary Judgment Order.) On April 12, 2006, Clinton provided Defendants with an amended second audit report covering the same audit period of January 2000 to June 30, 2003. This second audit report specifically objected only to claims for "sampling" and "synchronization" uses. Again, the report specified and calculated damages for these two new claims. SUF 14. Summary Judgment Order at 4; SAC ¶ 44 ("By letters dated December 9, 2004 and April 12, 2006, Defendants were provided with a copy of an audit report and a revised audit report detailing Defendants' defaults...."). (These claims now have been dismissed by the Summary Judgment Order).

The first and second audit reports and the audit periods covered reflect the only audits Clinton chose to conduct. SUF 15. They are alleged in the SAC to be his specific objection in writing. SAC ¶¶ 37, 39, 44. Clinton retained an experienced auditor who completed not one, but two, detailed reports. However, neither the first nor the second audit report – the only audits for the only periods that Clinton conducted and ***the only specific objections in writing relied on by Clinton*** – referred directly or indirectly in any way to improper (or any) accountings for internet royalties or to the provision of the Production Agreement on which he now bases that claim. SUF 16. Therefore, summary judgment is appropriate:

> "Pursuant to the Incontestability Clauses, [plaintiff] was given certain limited time periods to review and contest royalty figures. After expiration of that review period, she

---

(...continued)
first audit report was provided on December 9, 2004). As in the prior motion for summary judgment, this difference is immaterial.

    was bound by UMG's royalty statements, the Incontestability Clauses being as a time bar to any claims made after the contracted-for review period."

*Franconero*, 70 U.S.P.Q. 2d at 1401. *See also 24/7 Records, Inc. v. Sony Music Entertainment Inc.*, 566 F. Supp. 2d 305, 322 (S.D.N.Y. 2008) (summary judgment granted on enumerated royalty claims alleged in complaint for failure to timely specifically object in writing as to those claims); *Elliott-McGowan Prods.*, 145 F. Supp. at 49 ("The defense of a contractual time limitation may be given effect by a summary judgment motion where it can be established by indisputable proof.").[5]

  Moreover, although it is not necessary for the Court to reach this issue, Clinton's new claim also fails because he never filed suit on this claim until his Second Amended Complaint, way beyond the three year limitations period.

  Finally, in the Summary Judgment Order, the Court contemplated that "[i]f the tolling agreements, the meaning of which is still disputed, and other applicable agreements between the parties bar Clinton's claims, UMG is entitled to raise that with the Court." Summary Judgment Order at 19. As explained above, the tolling agreements do not bear on the outcome of this motion. The tolling agreements started on September 26, 2003, and ended January 31, 2007, and were limited to the "audit period," January 2000 through December 31, 2002 (later extended to June 30, 2003). SUF 10. It is indisputable that the audit reports never objected to the internet royalty calculation. For purposes of this motion, even assuming that the tolling

---

[5] Although not relevant here, in contrast to Clinton's failures, in *F.B.T. Productions, LLC v. Aftermath Records*, 621 F.3d 958, 966-67 (9th Cir. 2010), the plaintiff conducted an audit and "immediately raised the issue with [defendant] after the audit." In addition, although Defendants' motion need not address the issue, Defendants dispute the merits of Clinton's new internet royalty claim. Among other things, the Production Agreement provision relied on by Clinton differs significantly from that relied on by F.B.T. *Compare* ¶ 10, Exhibit A to Production Agreement, *with* 621 F.3d at 961.

1 agreements tolled both the applicable statutes of limitations and the contractual
2 limitations, Clinton did not provide the required specific objection in writing **with**
3 **respect to his new internet royalty claim**, for the audit period as tolled or otherwise,
4 let alone within three years of the rendering of the statements. Thus, neither the
5 tolling agreements nor the audit reports can prevent the entry of summary
6 judgment.[6]

### Conclusion

For all of the reasons set forth herein, Defendants' motion should be granted and Clinton's new internet royalty claim, including as reflected in paragraphs 25, 30, 31, and 40 of the SAC, should be dismissed.

DATED: June 20, 2011

RUSSELL J. FRACKMAN
MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Russell J. Frackman
Russell J. Frackman
Attorneys for Defendants

---

[6] To the extent Clinton's two remaining claims seek a declaratory judgment and/or accounting with respect to the internet royalty claim, they necessarily fall with the underlying breach of contract claim.