O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#201/202/206

CIVIL MINUTES - GENERAL

| Case No. | CV 07-672 PSG (JWJx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **(In Chambers) Order Granting Defendants' Motion for Partial Summary Judgment**

Pending before the Court is Defendants Universal Music Group, Inc. and UMG Recordings, Inc.'s Motion for Partial Summary Judgment. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving and opposing papers, the Court GRANTS Defendants' Motion.

I.   Background

Plaintiff George Clinton ("Plaintiff" or "Clinton") is a recording, artist, composer, performer, producer, a member of groups such as Parliament, and a producer of a number of artists, including Parlet.[1] Defendants are the record labels Universal Music Group, Inc. and UMG Recordings, Inc. (collectively, "UMG" or "Defendants"). UMG, formerly known as Polygram Records, Inc. is the successor-in-interest to the rights of Casablanca Records, Inc. ("Casablanca") and Filmworks, inc. ("Filmworks").

---

[1] The facts in this background section are taken from this Court's previous orders and are not reasonably in dispute. For a more detailed discussion, see this Court's May 4, 2011 Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment. *See* Dkt. #192.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#201/202/206

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, *et al.* | | |

In the fall or winter of 1980, the parties entered in a production agreement (the "1980 Agreement") relating, in part, to Clinton's recording and producing sound recordings as the artist Parliament. This agreement between Casablanca Records, Filmworks and Clinton's private loan-out company,[2] P-Funk, Inc. ("P-Funk"), provides for the recording and record production services of GEORGE CLINTON ('Artist') performing professionally as 'PARLIAMENT'." *See SAC*, Ex. A (the 1980 Agreement) A-26. The 1980 Agreement expressly acknowledges that Clinton's "production and recording services [were] the essence of the Agreement." *1980 Agreement at A-27*, ¶ 2.2. In addition, the 1980 Agreement grants Casablanca records certain rights, including, among others, (i) all right, title, and interest in and to the Parliament sound records created by Clinton, *id. at A-46-47*, ¶ 13(a); (ii) the right to exploit the Parliament sound records created by Clinton, *id.*; and (iii) the perpetual right to use Clinton's name, likeness, voice and sound effects and biographical information, *id. at A-47-48*, ¶ 13(b). In return, Casablanca agrees to (i) pay royalties to P-Funk from monies generated from exploiting the Parliament sound recordings, *id. at A-34-36*, ¶ 7; (ii) account to P-Funk in connection with its exploitation of the Parliament sound recordings, with a corresponding audit right granted to P-Funk, *id. at A-90-91*; and (iii) release Parliament sound recordings created by Clinton in the United States, *id. at A-71-72*, ¶ 33.

Exhibit A to the 1980 Agreement addresses the computation of royalties, and also includes an "Objection Provision," which states:

> All royalty statements and other accounts rendered by Company shall be binding upon Producer and shall not be subject to any objection for any reason unless specific objection is made by Producer, by written notice to Company stating the basis thereof, within three (3) years after the date such statement or account is rendered. Unless notice is given to Company as provided in this Paragraph 20, each royalty statement and other account rendered by Company shall be final, conclusive, and binding upon Producer, and shall constitute an account stated.

*Id. at A-90*, ¶ 20. The same paragraph includes a "Limitation Provision," which states:

> Producer shall be foreclosed from maintaining any action, claim or proceeding against Company in any forum or tribunal with respect to any statement or

---

[2] According to the Complaint, a loan-out company is a company through which an artist such as Clinton provides his creative services. *SAC* ¶ 9.

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

#201/202/206

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-672 PSG (JWJx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, *et al.* | | |

> account due hereunder unless (a) written notice is made to Company as provided in this paragraph 20 and (b) such action, claim or proceeding is commenced against Company in a court of competent jurisdiction within three (3) years after the date on which such statement or other account is rendered.

*Id.*

For a period of time, UMG was unable to locate Clinton and the royalty statements it sent were returned as undeliverable. In the spring or summer of 2001, UMG did locate Clinton and provided him with his first royalty statements and payments from Defendants for the exploitation of Parliament sound recordings under the 1980 Agreement. The royalty statement covered the period from 1996 through 2000, and the payment amounted to over $800,000.

On August 14, 2002, Clinton gave written notice to Defendants of his intent to audit their books and records to determine the accuracy of the royalty statements and payments rendered pursuant to the 1980 Agreement. Beginning in September 2003, Clinton and Defendants entered into several tolling agreements. The first tolling agreement, dated September 26, 2003, provided:

> This letter will confirm that [UMG] has agreed to a prospective tolling of the statute of limitations with respect to the claims relating to the [] audit . . . This tolling agreement will expire on March 26, 2004, and does not extend or revive any limitations period that has already expired as of the date hereof, and does not affect or limit any defense that may already exists, including estoppel, waiver and laches.

*Frackman Decl.*, Ex. 1.

Defendants allegedly extended the tolling agreement several times, with the latest extension setting the expiration date for January 31, 2007.

On December 9, 2004, Clinton provided Defendants with specific objections to the royalty calculations based on an audit report from this auditor Wlodinguer, Erk & Chanzs ("WEC") ("First Audit Report"). The First Audit Report concluded that Defendants owed Plaintiff additional royalties of $697,243. On April 12, 2006, Clinton provided Defendants with

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#201/202/206

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, *et al.* | | |

an updated and amended Second Audit Report covering the same time period. This report, in addition to the claims raised in the First Amended Audit Report, raised claims for sampling and synchronization uses. The Second Audit Report concluded that Defendants owed Plaintiff additional royalties in the amount of $32,988,493 pertaining to the following specific categories: (i) improper deductions of foreign withholding taxes; (ii) unauthorized premium sales; (iii) incorrect foreign and domestic pricing; (iv) incorrect packaging deductions; (v) uncleared samples; (vi) unapproved uses of masters. *Frackman Decl.*, Ex. 3.

When Defendants did not respond to the Second Audit Report, on January 29, 2007, Clinton filed this lawsuit for breach of contract for failure to pay royalties. On June 19, 2008, this Court granted UMG's Motion for Summary Judgment on all of the claims contained in the complaint, except for the fifth cause of action for declaratory relief. The Court reasoned that, under the 1980 Agreement, Clinton was required to file suit within three years of the rendering of a royalty statement, and because "Plaintiff bases his damages claim on the 7 royalty statements for the periods from January 1 through January 30, 2003," but failed to file suit until January 24, 2009, Clinton was contractually barred from bringing his claims. The Court also determined that the tolling agreements described above only tolled any applicable *statute* of limitations, not any *contractual* limitations period. A court trial was later held on Clinton's fifth cause of action and judgment was entered in favor of UMG.

Clinton appealed the Court's June 19 Order granting summary judgment in favor of UMG, but did not appeal the Court's final judgment with respect to the declaratory relief cause of action, which went to trial. The Ninth Circuit Court of Appeals affirmed in part and reversed in part. Specifically, it held that there was a genuine issue of material fact as to whether the tolling agreements tolled the *statute* of limitations, the *contractual* limitations, or both. Thus, the Court's conclusion that the tolling agreements only operated to prospectively toll the applicable statute of limitations, and not any contractual limitations periods, was not appropriate at the summary judgment stage.

When the case was remanded to this Court, UMG filed a Motion for Summary Judgment again, and Clinton filed a Motion for leave to Amend the Complaint. The Court granted in part and denied in part UMG's summary judgment motion, and gave Clinton the opportunity to file a Second Amended Complaint. In the Second Amended Complaint, Clinton, for the first time in this protracted litigation, added a new claim for alleged underpayment of "internet royalties, *i.e.*, exploitation by 'download providers . . . and mastertone providers . . . for permanent

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

#201/202/206

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, *et al.* | | |

downloads." *Mot.* 1:2-5 (quoting *SAC* ¶¶ 30, 31, 43). Defendants filed a Motion for Partial Summary Judgment with respect to Clinton's "internet royalties" claims, which Clinton opposed and filed a Cross-Motion for Partial Summary Judgment with respect to the same. In addition, Clinton filed a Motion for Specific and Limited Discovery in order to identify by "name and the applicable royalty rate or percentage" any third-party contracting entity providing Clinton's music via download, streaming or other electronic or digital dissemination. Those motions are now pending before the Court.

II.     Legal Standard

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, and "may not rest upon mere allegations or denials of his pleading." *See id.* at 248, 257 (citations omitted).

A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Such an issue of fact is a genuine and material issue if it cannot be reasonably resolved in favor of either party and may affect the outcome of the suit. *See Anderson,* 477 U.S. at 248, 250-51.

If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence. Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. *See* Fed. R. Civ. P. 56(e).

When a party without the burden of persuasion at trial—generally, a defendant—moves for summary judgment, it must either "produce evidence negating an essential element of the nonmoving party's claim or defense *or* show that the nonmoving party does not have enough

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#201/202/206

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, *et al.* | | |

evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (emphasis added); *see also Masimo Corp. v. Tyco Health Care Group, L.P.*, No. CV 02-4770 MRP, 2004 WL 5907538, at *3 (C.D. Cal. June 10, 2004) ("A defendant moving for summary judgment satisfies the initial burden of production by providing evidence negating any essential element of the nonmovants' claims or by showing that there is an absence of evidence to support the non-moving party's case." (citations and quotations omitted)).

III. Discussion

The bulk of Defendants' Motion for Partial Summary Judgment is devoted to a single issue: whether Clinton ever timely and properly objected to payment of "internet royalties."

As mentioned above and in this Court's May 4, 2011 Order, the 1980 Agreement and its objections and limitation provisions "clearly place[] the burden on Clinton to inform UMG of non-receipt of royalty statements." *See* Dkt. #192 at 9. In order to collect unpaid or underpaid royalties, it is Clinton who must provide a "specific objection," and it is Clinton who must timely file suit. Provisions such as the objection and limitations provisions are common in entertainment contracts to "permit the accounting party to close its books at a time certain, as agreed by the parties, and not be required to attempt to investigate or deal with stale claims." *Mot.* 4:15-17 (citing *Boston Edison Co. v. F.E.R.C.*, 856 F.2d 361, 372 (1st Cir. 1988); *Breitman v. Brody*, 113 Cal. App. 2d 642, 645 (1952)). Unless Clinton specifically objected to the internet royalty claims at issue in the Second Amended Complaint, the 1980 Agreement bars Clinton's internet royalty claims here.

Defendants provide evidence in support of their argument that "Clinton completely failed to provide a specific written objection with respect to his new internet royalty claims." *Mot.* 5:15-16. Most importantly, Defendants point to the First and Second Audit Reports as evidence that "[n]either . . . audit report[] specifically objected to the calculation of internet royalties." *Statement of Undisputed Facts* ("*SSUF*") No. 16. Clinton failed to dispute this fact, *see Pl's Statement of Disputed Facts* No. 16, but does make the argument that the 1980 Agreement's "Objection Provision's specificity requirement is a material issue of fact that would be inappropriate for the Court to determine on summary judgment." *Opp'n* 17:12-18. While Defendants, as the moving parties, have met their burden, Plaintiff has wholly failed to establish a genuine dispute of fact in response.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#201/202/206

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, *et al.* | | |

The language of the 1980 Agreement is clear and, contrary to Clinton's position, there is no material issue of fact as to the meaning of the term "specific objection." From the looks of the First and Second Audit Reports, Clinton clearly understood that a specific objection is one that is "accompanied by a statement of one or more grounds in support of the objection." *Black's Law Dictionary* (9th ed. 2009); *see also Frackman Decl.*, Exs. 2-3. In fact, in each of the two audit reports, Clinton not only categorizes the different types of royalties allegedly owed (omitting any reference to internet or internet-related royalties), but also itemizes each category and identifies the infringing records, artists, television shows, and movies, without ever referencing the type of claim he now raises as owed internet royalties. *See Frackman Decl.*, Ex. 3. More than that, however, is the fact that while Clinton insists there is a genuine dispute of material fact as to the meaning of "specific objection" as it is used in the 1980 Agreement, Clinton presents no evidence to support the existence of such a dispute, nor does he provide any reason why "specific objection" means anything other than "specific objection." *See Opp'n*.

The only two specific objections that Clinton relies on as the basis for his second Amended Complaint come from the First and Second Audit Reports. *SSUF* No. 16. In those Audit Reports, Clinton objects to: (1) improper deduction of foreign withholding taxes; (2) unauthorized premium sales, which is the unauthorized release of premium records without consent; (3) incorrect foreign and domestic pricing, which is assessed by looking at the wholesale price of Clinton's records; (4) incorrect packaging deductions; (5) uncleared samples, which is the "use of a portion of a previously-recorded sound recording in a new sound recording," Dkt. #192 n.5; and (6) unapproved uses of masters, also known as "synchronization use," which is the "synchronization of a recording with visual material, such as a television show or a film," *id.* These audit reports refer to a specific and itemized schedule of royalties allegedly owed, but not once do the First or Second Audit Reports ever refer to the calculation of internet royalties. Defendants have established that they are entitled to judgment as a matter of law. Thus, the new claims in the Second Amended Complaint for internet royalties are barred for failure to timely and specifically object in writing as required by the 1980 Agreement.[3]

---

[3] Clinton's Opposition cites extensively to the Ninth Circuit's ruling in *F.B.T. Productions, LLC v. Aftermath Records*, 621 F.3d 958 (9th Cir. 2010), a case that, like this one, dealt with internet-related royalties. However, the fact that that case dealt with internet-royalties allegedly owed to a musician does not in any way answer the question of whether Clinton specifically and timely objected to the statements and royalties provided to him by Defendants. Similarly, the Ninth Circuit's earlier opinion in this case, *Clinton v. Universal Music Group, Inc.*, 376 Fed. Appx 780 (9th Cir. 2010), did hold that a genuine dispute of material fact existed as to the meaning of the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#201/202/206

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-672 PSG (JWJx) | Date | August 9, 2011 |
|---|---|---|---|
| Title | George Clinton v. Universal Music Group, *et al.* | | |

IV.  Conclusion

   Based on the foregoing and the reasons stated in Defendants' Motion and Reply, the Court GRANTS Defendants' Motion for Summary Judgment.  As a result, Plaintiff's Cross-Motion for Partial Summary Judgment on the issue of internet royalties is DENIED,[4] as is Plaintiff's Motion for Specific and Limited Discovery under Federal Rule of Civil Procedure 56(d); any successful discovery on the grounds sought by Plaintiff is irrelevant to Defendants' successful Motion for Partial Summary Judgment.

   **IT IS SO ORDERED.**

---

tolling agreements, but did not so hold with respect to the specific objection provision of the 1980 Agreement.  Even assuming the tolling agreements operated as Clinton says they do, the outcome here is still the same because Clinton *never* specifically objected to any accounting statements with respect to internet royalties, in contravention of the clear language of the 1980 Agreement.

[4] Clinton's Cross-Motion also references Defendants' supposed admission that they owe Clinton $155,339.00 in unpaid royalties.  *See Cross-Mot.* 9:17; 16:19-27.  Clinton did not provide the letter that purportedly includes this admission, probably because that money was included in a settlement offer, not an admission of royalties owed.  *See Def's Cross-Mot. SSUF* 3 (citing *Adler Decl.*, Ex. D); *see also Clinton v. Universal Music Group*, 376 Fed. Appx. 780, 782 (9th Cir. 2010) (referring to the letter as "the March 2005 settlement offer").  Thus, contrary to Clinton's position, it is not "undisputed" that Defendants owe $155,339.00 and there is no basis on which to grant Clinton's Cross-Motion for Partial Summary Judgment.